ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

v.

JOSEPH DUPONT,
SHAWN CRONIN,
SLAVA (STANLEY) KAPLAN, and
PAUL FELDMAN,

Defendants.

---

**SEALED INDICTMENT**

23 Cr.

**23 CRIM   320**

## COUNT ONE
**(Conspiracy to Commit Securities Fraud and Tender Offer Fraud)**

The Grand Jury Charges:

1.      In or about 2020, SHAWN CRONIN, SLAVA (STANLEY) KAPLAN ("STANLEY KAPLAN"), and PAUL FELDMAN, the defendants, together made more than $2.2 million dollars in illegal profits by trading in stock and options[1] based on inside information that JOSEPH DUPONT, the defendant, misappropriated from his employer Alexion Pharmaceuticals, Inc. ("Alexion").

2.      At least as early as in or about April 2020, JOSEPH DUPONT, the defendant, tipped his childhood friend SHAWN CRONIN, the defendant, with valuable, nonpublic information that DUPONT had learned in the course of his employment as a Vice President at Alexion, namely, that Alexion was imminently going to acquire Portola Pharmaceuticals, Inc.

---

[1] Options are financial contracts that give the option holder the right but not the obligation to buy or sell a stock, bond, commodity, or other asset or instrument at a specified price within a specified time period. The stock, bond, or commodity is known as the "underlying asset." The specified price is known as the "strike price." The end of the specified time period is known as the "expiration date," which is the last day that the option contract is valid.

("Portola"), a publicly-traded biopharmaceutical company. After the tip and over the course of in or about April 2020, CRONIN purchased Portola stock and call options on the basis of the material nonpublic information that he received from DUPONT, and also tipped two friends, both of whom were known to DUPONT, STANLEY KAPLAN, the defendant, and Jarett Mendoza, regarding the pending acquisition so that they too could make profitable trades in Portola stock and options.

3.      In or about April 2020, STANLEY KAPLAN, the defendant, purchased both stock and call options in Portola based on the material nonpublic information that he had received from SHAWN CRONIN, the defendant. KAPLAN further told other individuals to purchase Portola stock, including a member of his family ("Kaplan Family Member-1") and PAUL FELDMAN, the defendant. KAPLAN described the planned acquisition of Portola to FELDMAN as a "high confidence event." FELDMAN, after hearing the news of the upcoming acquisition, texted KAPLAN: "I'm gonna owe you big."

4.      Although he had purchased Portola stock historically, PAUL FELDMAN, the defendant, began aggressively purchasing call options in Portola based on the inside information about the Portola acquisition that he received from STANLEY KAPLAN, the defendant. FELDMAN, like KAPLAN, shared that information with friends, family, and colleagues, including a member of his family ("Feldman Family Member-1") and four associates ("Individuals-1, -2, -3, and -4"). In instructing Individual-1, a colleague from work with whom FELDMAN was close, to purchase Portola stock, FELDMAN wrote, "Buy 50 more PTLA [Portola]. Youll [sic] be slightly more on margin. After the buyout you can sell it all," referring to the upcoming Portola acquisition.

2

5.     Based on the material nonpublic information that JOSEPH DUPONT, the defendant, misappropriated from Alexion, DUPONT, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, collectively caused at least seven other people to trade in Portola stock.

6.     Alexion's acquisition of Portola was announced publicly on the morning of May 5, 2020. Portola's stock increased significantly in value. SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, and their tippees, sold their shares of Portola and call options for Portola stock, reaping millions of dollars of illegally-obtained trading profits.

DUPONT's Acquisition of Material Nonpublic Information

7.     Portola was a commercial-stage biopharmaceutical company that traded under the symbol "PTLA" on the Nasdaq Global Market, which is headquartered in New York, New York. In or about February 2020, Alexion informed Portola of its interest in a potential acquisition of Portola at a price of $18 per share. Portola confirmed its offer in a non-binding letter, and discussions regarding a potential acquisition continued into in or about April 2020, when Alexion and Portola entered into a confidentiality agreement for the purposes of continuing their discussions of a possible acquisition.

8.     JOSEPH DUPONT, the defendant, was informed of Alexion's upcoming acquisition of Portola on or about January 31, 2020. On or about April 1, 2020, Alexion submitted a non-binding indication of interest to acquire Portola for $18 per share. That day, Alexion was trading between approximately $6.41 and $7.14 per share. As of at least on or about April 3, 2020, DUPONT, among others, was tasked with performing due diligence on Portola in anticipation of the acquisition. On that date, DUPONT was informed that the acquisition would be announced the week of May 4, 2020. In the weeks that followed, DUPONT continued to work

on the anticipated acquisition up to the public announcement on May 5, 2020. In connection with his work, DUPONT was provided records regarding confidential details relevant to the transaction and joined conference calls in which the anticipated acquisition was discussed.

<u>The Defendants' Insider Trading in Portola</u>

9.      Between in or about April 2020 and in or about May 2020, JOSEPH DUPONT, the defendant, abused the trust and confidence placed in him by Alexion by providing information about the Portola acquisition to his close friend, SHAWN CRONIN, the defendant, with the expectation that CRONIN would use that information to engage in insider trading in Portola stock. In addition to being childhood friends, CRONIN, who at the time was a Sergeant at the Police Department of Dighton, Massachusetts, and later served as that town's Police Chief, supervised DUPONT in DUPONT's capacity as a reserve officer in the same Police Department.

10.      For example, on or about April 8, 2020, an internal Alexion call was scheduled for the purpose of discussing commercial diligence of Portola in advance of the acquisition. That evening, JOSEPH DUPONT, the defendant, called SHAWN CRONIN, the defendant, and the two spoke for approximately twenty minutes. A few minutes after that call, CRONIN texted STANLEY KAPLAN, the defendant, "If you need something to take your mind off of the everyday battle, remember the stock I told you about? Good time to buy." CRONIN then placed an order for 1,394 shares of Portola.

11.      JOSEPH DUPONT, the defendant, continued to share information with SHAWN CRONIN, the defendant, about the impeding acquisition of Portola throughout the months of April and May 2020.  On the basis of that information and DUPONT's initial disclosure, CRONIN purchased 700 additional shares of Portola on or about April 23, 2020, and purchased

out-of-the-money call options on Portola's stock on or about April 28, 2020; May 1, 2020; and May 4, 2020.

12.     SHAWN CRONIN, the defendant, in turn shared the inside information about Portola's pending acquisition with a friend, STANLEY KAPLAN, the defendant, who was known to JOSEPH DUPONT, the defendant. CRONIN shared the information both so that KAPLAN could trade in advance of the acquisition and so that KAPLAN would assist CRONIN in formulating trading strategies designed to maximize CRONIN's own insider trading profits. CRONIN also tipped Jarett Mendoza, a childhood friend of CRONIN and DUPONT, about the impending acquisition and assisted Mendoza in purchasing Portola stock in the days before the planned acquisition was made public.

13.     After SHAWN CRONIN, the defendant, informed STANLEY KAPLAN, the defendant, about the upcoming acquisition of Portola, KAPLAN further shared that information with PAUL FELDMAN, the defendant, so that FELDMAN could trade on it. For example, on or about April 26, 2020, FELDMAN confirmed his understanding of the upcoming Portola acquisition, texting "Likarstva[2]…Made by alexion.. alexion is buying…P_____?" KAPLAN texted FELDMAN back, in Russian, "Yes."

14.     Less than a week later, on or about Friday, May 1, 2020, PAUL FELDMAN, the defendant, texted STANLEY KAPLAN, the defendant, "Hopefully Monday [May 4, 2020] is a big day. It's supposed to be Monday right?" Notably, May 4, 2020 was the initial target date for the announcement of the Portola acquisition (although that acquisition ultimately was announced on May 5, 2020, before markets opened).

---

[2] "Likarstva" is the Russian term used to refer to "medication."

15. On the basis of the illegal tips that he received throughout April and early May 2020 regarding Portola's impending acquisition, STANLEY KAPLAN, the defendant, placed orders to buy Portola stock and out-of-the-money call options on multiple occasions from at least on or about April 15, 2020 up to and including at least on or about May 4, 2020. Consistent with his understanding that the Portola acquisition would be announced on May 4, 2020, that morning, KAPLAN placed a pre-market order to purchase 65 Portola call options contracts with an expiration date of May 15, 2020 and a strike price of $10, which was significantly higher than the $7.04 closing price of Portola stock on the prior trading day, making those options out-of-the-money, and reflecting a belief by KAPLAN that the price of Portola stock would rise by May 15, 2020.

16. PAUL FELDMAN, the defendant, used the illegal tips that he received regarding Portola's impending acquisition to purchase call options in Portola stock from at least on or about April 23, 2020, up to and including at least on or about May 1, 2020. Consistent with his understanding that the acquisition would be announced on May 4, 2020, on or about April 29, 2020, and May 1, 2020, FELDMAN placed multiple orders to buy out-of-the-money call options in Portola with expiration dates in mid-May and mid-June.

17. In total, between on or about April 8, 2020 and on or about May 4, 2020, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, collectively purchased over 20,000 shares of Portola, and over 2,800 call options for Portola stock.

18. In addition to their own trading, in or about April 2020 and early May 2020, in advance of the public acquisition, STANLEY KAPLAN and PAUL FELDMAN, the defendants, each encouraged friends, family members, and work colleagues to purchase Portola stock, which many did.

19.     On or about May 5, 2020, at approximately 7:00 a.m., Alexion and Portola publicly announced that the companies had entered into a definitive agreement pursuant to which Alexion would acquire Portola for $18 per share in cash via a tender offer. Following the news, Portola's stock price rose from approximately $7.76, where it had closed the day before, up to approximately $17.91 per share, an increase of more than 130%. In the days after the announcement, SHAWN CRONIN, the defendant, sold the majority of his Portola shares and call options, earning approximately $71,996.06 in insider trading profits. STANLEY KAPLAN, the defendant, likewise sold all his shares and options, earning approximately $472,053.61 in insider trading profits. PAUL FELDMAN, the defendant, sold all his shares and options, earning approximately $1,730,827.54 in insider trading profit.

The Defendants' Post-Trading Conduct

20.     Following the public announcement, STANLEY KAPLAN and PAUL FELDMAN, the defendants, sent and received text messages, cryptically referring to an insider source and reflecting their shared expectation of continuing to receive inside information regarding Alexion from the same source that had tipped them to the then-confidential acquisition announcement:

a.     On or about May 13, 2020, Individual-1 texted FELDMAN, "I need more inside information."

b.     On or about May 15, 2020, FELDMAN texted KAPLAN, "Knowing of a buyout or any news beforehand is gol[d]." KAPLAN texted back: "Yup," adding in Russian, in substance, "Let's hope our golden goose will continue laying golden eggs!"

c. On or about May 23, 2020, while discussing trading strategies for an upcoming stock purchase, FELDMAN texted KAPLAN: "All we need is a little bit of luck. Having golden goose definitely doesn't hurt." KAPLAN responded, "Oh yeah," adding in Russian, in substance, "I am expecting a report from Stierlitz soon!," referencing a fictional character in a Russian book series who was a Soviet agent who infiltrated Nazi command.

21. Subsequently, on or about Tuesday, June 23, 2020, PAUL FELDMAN, the defendant, texted STANLEY KAPLAN, the defendant: "We need to decide on ALXN [Alexion] in next 2 days." KAPLAN then texted SHAWN CRONIN, the defendant, "Hey, I just realized, next week is a short trading week because of the Fourth of July, we need to make a game plan by this Thursday morning so we can buy all the calls we want." CRONIN responded, "Ok." The following day, CRONIN texted KAPLAN, in reference to JOSEPH DUPONT, the defendant, "It's going to be impossible for me to see my buddy until the weekend." KAPLAN responded, "No worries. We'll do what we can on Monday." CRONIN nonetheless made several attempts that afternoon to visit DUPONT, ultimately meeting with him in person that evening. Immediately after seeing DUPONT, CRONIN called and spoke to KAPLAN.

22. After the public announcement of the Portola acquisition, the Financial Industry Regulatory Authority launched an inquiry into trading in Portola stock, and asked Alexion whether any of the names on a list of people who had placed well-timed trades in Portola stock were recognizable to employees who were involved in the acquisition. JOSEPH DUPONT, the defendant, was provided the list and recognized the names of SHAWN CRONIN and STANLEY KAPLAN, the defendants, as well as the name Jarett Mendoza. DUPONT falsely responded that he had not discussed the upcoming acquisition with CRONIN or Mendoza, and failed to identify KAPLAN as an individual he recognized.

Statutory Allegations

23.     Between in or about April 2020 and May 2020, in the Southern District of New York and elsewhere, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, (i) securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5; (ii) securities fraud, in violation of Title 18, United States Code, Section 1348; and (iii) tender offer fraud, in violation of Title 15, United States Code, Sections 78n(e) and 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

24.     It was a part and object of the conspiracy that SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, and others known and unknown, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, would and did use and employ, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

25.     It was further a part and object of the conspiracy that SHAWN CRONIN,

STANLEY KAPLAN, and PAUL FELDMAN, the defendants, and others known and unknown,

would and did knowingly execute, and attempt to execute, a scheme and artifice to (a) defraud a

person in connection with a security of an issuer with a class of securities registered under

Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under

Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and

fraudulent pretenses, representations, and promises, money and property in connection with the

purchase and sale of a security of an issuer with a class of securities registered under Section 12

of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d)

of the Securities Exchange Act of 1934, in violation of Title 18, United States Code, Section

1348.

26.     It was further a part and object of the conspiracy that SHAWN CRONIN,

STANLEY KAPLAN, and PAUL FELDMAN, the defendants, and others known and unknown,

willfully and knowingly would and did engage in a fraudulent, deceptive, and manipulative act

and practice in connection with a tender offer, in that after an offering person had taken a

substantial step and steps to commence, and had commenced, a tender offer, CRONIN,

KAPLAN, and FELDMAN, while in possession of material information relating to such tender

offer which information they knew and had reason to know was nonpublic and which they knew

and had reason to know had been acquired directly and indirectly from the offering person, the

issuer of the securities sought and to be sought by such tender offer, and an officer, director,

partner, and employee and other person acting on behalf of the offering person and such issuer:

(a) purchased and sold and caused to be purchased and sold, and (b) communicated material,

nonpublic information relating to a tender offer to another person under circumstances in which

10

it was reasonably foreseeable that such communication was likely to result in the purchase and sale of, such securities and securities convertible into and exchangeable for such securities and an option and right to obtain and to dispose of such securities and options and rights, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, in violation of Title 15, United States Code, Sections 78n(e) and 78ff, and Title 17, Code of Federal Regulations, Sections 240.14e-3(a) and 240.14e-3(d).

Overt Acts

27.     In furtherance of the conspiracy and to effect its illegal objects, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.     Between in or about April 2020 and May 2020, JOSEPH DUPONT, the defendant, a Vice President at Alexion, abused the trust and confidence placed in him by Alexion by providing confidential information about Alexion's contemplated acquisition of Portola to SHAWN CRONIN, the defendant, who illegally placed trades in Portola stock.

b.     Between in or about April 2020 and May 2020, CRONIN communicated to STANLEY KAPLAN, the defendant, material nonpublic information about the timing and likely price effect of the acquisition on Portola's stock price.

c.     On or about April 28, 2020, May 1, 2020, and May 4, 2020, CRONIN purchased call options for Portola shares based on material nonpublic information and on or about April 8, 2020 and April 23, 2020, CRONIN purchased shares of Portola, which were traded on the Nasdaq Global Market in New York, New York, based on material nonpublic information.

11

d.      On or about April 27, 2020, April 28, 2020, April 30, 2020, May 1, 2020, and May 4, 2020, KAPLAN purchased call options for Portola shares based on material nonpublic information. On or about April 15, 2020, April 24, 2020, April 29, 2020, and May 4, 2020, KAPLAN purchased shares of Portola, which were traded on the Nasdaq Global Market in New York, New York, based on material nonpublic information.

e.      On or about April 23, 2020, April 24, 2020, April 27, 2020, April 28, 2020, April 29, 2020, and May 1, 2020, PAUL FELDMAN, the defendant, purchased call options for Portola shares based on material nonpublic information. On or about April 27, 2020, and April 28, 2020, FELDMAN purchased shares of Portola, which were traded on the Nasdaq Global Market in New York, New York, based on material nonpublic information.

(Title 18, United States Code, Section 371.)

## COUNTS TWO THROUGH ELEVEN
### (Securities Fraud)

The Grand Jury further charges:

28.     The allegations contained in paragraphs 1 through 22 and 27 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

29.     On or about the dates set forth below, in the Southern District of New York and elsewhere, JOSEPH DUPONT, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, willfully and knowingly, directly and indirectly, by use of a means and instrumentality of interstate commerce and of the mails, and a facility of a national securities exchange, used and employed, in connection with the purchase and sale of a security, a manipulative and deceptive device and contrivance, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5 by: (a) employing a device, scheme, and artifice to defraud; (b) making an untrue statement of a material fact and omitting to state a material fact necessary

in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in an act, practice, and course of business which operated and would operate as a fraud and deceit upon a person, to wit, in violation of his duties of trust and confidence to Alexion, DUPONT provided material nonpublic information that he obtained in the course of his employment at Alexion to CRONIN in anticipation that CRONIN would trade securities on that information, and CRONIN, KAPLAN, and FELDMAN, knowing that the information had been obtained in breach of a duty, used it to execute and cause others to execute the securities transactions listed below on or about the dates listed below:

| Count | Defendant(s) | Trade Date(s) | Transactions |
|---|---|---|---|
| 2 | JOSEPH DUPONT; SHAWN CRONIN | April 8-May 4, 2020 | Purchase of 2,094 shares of Portola and 75 call options for Portola by SHAWN CRONIN |
| 3 | SHAWN CRONIN | May 4, 2020 | Purchase of 3,561 shares of Portola by Jarett Mendoza |
| 4 | SHAWN CRONIN; STANLEY KAPLAN, | April 15 – May 4, 2020 | Purchase of 1,379 shares of Portola and 596 call options for Portola by STANLEY KAPLAN |
| 5 | STANLEY KAPLAN | May 1, 2020 | Purchase of 150 call options for Portola by Kaplan Family Member-1 |
| 6 | STANLEY KAPLAN; PAUL FELDMAN | April 23-May 1, 2020 | Purchase of 17,000 shares of Portola and over 2,100 call options for Portola by PAUL FELDMAN |
| 7 | PAUL FELDMAN | April 24-May 4, 2020 | Purchase of 30,000 shares of Portola by Feldman Family Member-1 |
| 8 | PAUL FELDMAN | April 24-May 4, 2020 | Purchase of 275 shares of Portola by Individual-1 |
| 9 | PAUL FELDMAN | April 9-May 1, 2020 | Purchase of 19,600 shares of Portola and over 1,640 call options for Portola by Individual-2 |
| 10 | PAUL FELDMAN | April 27-29, 2020 | Purchase of 1,350 shares of Portola by Individual-3 |

| 11 | PAUL FELDMAN | April 27, 2020 | Purchase of 200 shares of Portola by Individual-4 |

(Title 15, United States Code, Sections 78j(b) & 78ff; Title 17, Code of Federal Regulations, Sections 240.10b-5, 240.10b5-1, and 240.10b5-2; and Title 18, United States Code, Section 2.)

## COUNT TWELVE
### (Securities Fraud)

The Grand Jury further charges:

30.     The allegations contained in paragraphs 1 through 22 and 27 of this Indictment are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

31.     In or about April 2020, in the Southern District of New York and elsewhere, JOSEPH DUPONT, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, knowingly executed, and attempted to execute, a scheme and artifice to (a) defraud a person in connection with a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, and (b) obtain, by means of false and fraudulent pretenses, representations, and promises, money and property in connection with the purchase and sale of a security of an issuer with a class of securities registered under Section 12 of the Securities Exchange Act of 1934 and that was required to file reports under Section 15(d) of the Securities Exchange Act of 1934, to wit, DUPONT, CRONIN, KAPLAN, and FELDMAN schemed to defraud Alexion by embezzling material nonpublic information from Alexion for the purpose of executing securities transactions in Portola.

(Title 18, United States Code, Sections 1348 and 2.)

## COUNTS THIRTEEN THROUGH TWENTY-TWO
### (Tender Offer Fraud)

The Grand Jury further charges:

32.     The allegations contained in paragraphs 1 through 22 and 27 are hereby repeated, realleged, and incorporated by reference, as if fully set forth herein.

33.     On or about the dates listed below, in the Southern District of New York and elsewhere, JOSEPH DUPONT, SHAWN CRONIN, STANLEY KAPLAN, and PAUL FELDMAN, the defendants, willfully and knowingly engaged in a fraudulent, deceptive, and manipulative act and practice in connection with a tender offer, in that after an offering person had taken a substantial step and steps to commence, and had commenced, a tender offer, DUPONT, CRONIN, KAPLAN, and FELDMAN, while in possession of material information relating to such tender offer which information they knew and had reason to know was nonpublic and which they knew and had reason to know had been acquired directly and indirectly from the offering person, the issuer of the securities sought and to be sought by such tender offer, and an officer, director, partner, and employee and other person acting on behalf of the offering person and such issuer: (a) purchased and sold and caused to be purchased and sold, and (b) communicated material, nonpublic information relating to a tender offer to another person under circumstances in which it was reasonably foreseeable that such communication was likely to result in the purchase and sale of, such securities and securities convertible into and exchangeable for such securities and an option and right to obtain and to dispose of such securities and options and rights, without such information and its source having been publicly disclosed by press release and otherwise within a reasonable time prior to such purchase and sale, to wit, based on material nonpublic information related to Alexion's tender offer to acquire

Portola, DUPONT, CRONIN, KAPLAN, and FELDMAN executed and caused others to execute

the securities transactions in Portola stock listed below:

| Count | Defendant(s) | Trade Date(s) | Transactions |
|-------|--------------|---------------|--------------|
| 13 | JOSEPH DUPONT; SHAWN CRONIN | April 8-May 4, 2020 | Purchase of 2,094 shares of Portola and 75 call options for Portola by SHAWN CRONIN |
| 14 | SHAWN CRONIN | May 4, 2020 | Purchase of 3,561 shares of Portola by Jarett Mendoza |
| 15 | SHAWN CRONIN; STANLEY KAPLAN, | April 15 – May 4, 2020 | Purchase of 1,379 shares of Portola and 596 call options for Portola by STANLEY KAPLAN |
| 16 | STANLEY KAPLAN | May 1, 2020 | Purchase of 150 call options for Portola by Kaplan Family Member-1 |
| 17 | STANLEY KAPLAN; PAUL FELDMAN | April 23-May 1, 2020 | Purchase of 17,000 shares of Portola and over 2,100 call options for Portola by PAUL FELDMAN |
| 18 | PAUL FELDMAN | April 24-May 4, 2020 | Purchase of 30,000 shares of Portola by Feldman Family Member-1 |
| 19 | PAUL FELDMAN | April 24-May 4, 2020 | Purchase of 275 shares of Portola by Individual-1 |
| 20 | PAUL FELDMAN | April 9-May 1, 2020 | Purchase of 19,600 shares of Portola and over 1,640 call options for Portola by Individual-2 |
| 21 | PAUL FELDMAN | April 27-29, 2020 | Purchase of 1,350 shares of Portola by Individual-3 |
| 22 | PAUL FELDMAN | April 27, 2020 | Purchase of 200 shares of Portola by Individual-4 |

(Title 15, United States Code, Sections 78n(e) & 78ff; Title 17, Code of Federal Regulations, Sections 240.14e-3(a) & 240.14e-3(d); and Title 18, United States Code, Section 2.)

## FORFEITURE ALLEGATION

34.     As a result of committing one or more of the offenses alleged in Counts One

through Twenty-Two of this Indictment, JOSEPH DUPONT, SHAWN CRONIN, STANLEY

Case 1:23-cr-00320-GHW   Document 1   Filed 06/28/23   Page 17 of 17


KAPLAN, and PAUL FELDMAN, the defendants, shall forfeit to the United States, pursuant to

Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

2461(c), any and all property, real and personal, that constitutes or is derived from proceeds

traceable to the commission of the offenses alleged in Counts One through Twenty-Two,

including but not limited to a sum of money in United States currency representing the amount of

proceeds traceable to the commission of said offenses that the defendants personally obtained.

### Substitute Assets Provision

35.    If any of the above-described forfeitable property, as a result of any act or

omission by the defendants:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), and

Title 28, United States Code Section 2461, to seek forfeiture of any other property of the

defendants up to the value of the forfeitable property described above.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section
853(p); Title 28, United States Code, Section 2461.)


FOREPERSON
4/28/22

DAMIAN WILLIAMS
United States Attorney


17